Filed 7/19/21  P. v. Russell CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B305287 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA395919) |
| v. | |
| RAYMOND JOHN RUSSELL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard S. Kemalyan Judge.  Affirmed.

The Appellate Law Firm and Berangere Allen-Blaine for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Amanda Lopez and Scott A. Taryle, Deputy Attorneys General, for Plaintiff and Respondent.

Raymond Russell, convicted in 2014 of first degree, premeditated murder and two counts of attempted willful, deliberate and premediated murder, appeals the superior court's order denying his petition for resentencing under Penal Code section 1170.95.[1] Because the record of conviction indisputably established Russell was convicted as a direct aider and abettor of murder, acting with express malice (an unlawful intent to kill), a theory of accomplice liability for murder that remains valid after enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437), Russell is ineligible for resentencing under section 1170.95 as matter of law. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Russell's Commitment Offense*

Russell was charged in an information filed on February 1, 2012 with one count of murder (§ 187) and two counts of attempted willful, deliberate and premeditated murder (§§ 664, 187) with special allegations as to all three counts that the crimes had been committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) and Russell had personally and intentionally discharged a firearm causing great bodily injury or death or a principal in the offenses had done so (§ 12022.53, subds. (b), (c), (d), (e)(1)). Our opinion affirming Russell's convictions described the evidence presented at trial. (*People v. Russell* (Feb. 14, 2017, B258669) [nonpub. opn.].)

In the early morning of October 16, 2011 Kevin Peary, Jonathan Rambo and Keshawn Corbin were standing outside an apartment building in a neighborhood claimed by the Crips criminal street gang. An SUV stopped in the middle of the street,

---

[1] Statutory references are to this code.

and three men got out.  All were wearing hooded sweatshirts with the hoods up; each of the men was holding a gun.  One of the men shouted "Blood" and issued a gang challenge, "Where are you from?"  Peary responded, "I don't bang."  "Fuck Naps," a pejorative term for a member of the Rollin 60's Crips gang, was yelled in response.  The three men from the SUV then began shooting, returned to their vehicle and drove away.

Corbin died from multiple gunshot wounds.  Rambo was shot twice in the right leg and survived.  Peary escaped uninjured.  Although Peary testified at trial and described the events leading to Corbin's death, he did not identify Russell as one of the three armed men involved in the shooting.

Police investigating the shooting found Russell's cell phone at the crime scene.  Based on Peary's description of the SUV (a green Chevy Tahoe), it was determined a similar vehicle was owned by Russell's mother.  Russell had been issued three traffic citations while driving his mother's SUV in the months prior to the shooting.  After his arrest, Russell made statements to a confidential informant placed in his cell that appeared to implicate Russell in the shooting.  A recording of the conversation between Russell and the informant was played for the jury.

2.  *The Jury Instructions*

With respect to the charge of murder, the trial court instructed the jury with CALCRIM No. 520:  "To prove that the defendant is guilty of this crime, the People must prove that:  [¶] 1.  The defendant committed an act that caused the death of another person; AND [¶] 2.  When the defendant acted, he had a state of mind called malice aforethought; AND [¶] 3.  He killed without lawful excuse or justification.  [¶]  There are two kinds of malice aforethought, express malice and implied malice.  Proof of

either is sufficient to establish the state of mind required for murder. [¶] The defendant acted with express malice if he unlawfully intended to kill. [¶] The defendant acted with implied malice if: [¶] 1. He intentionally committed an act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; AND [¶] 4. [¶] He deliberately acted with conscious disregard for human life. [¶] . . . [¶] An act causes death if the death is the direct, natural and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all the circumstances established by the evidence."

As to first degree murder, the court instructed in accordance with CALCRIM No. 521: "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately and with premeditation. The defendant acted willfully if he intended to kill. The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the act[s] that caused death."

The court also instructed on direct aiding and abetting an intended crime using CALCRIM Nos. 400 and 401. As given, CALCRIM No. 401 explained, to prove Russell was guilty of Corbin's murder based on aiding and abetting that crime, the People had to prove a perpetrator committed the crime; Russell knew the perpetrator intended to commit the crime; Russell

4

intended to aid and abet the perpetrator in committing the crime; and Russell's words or conduct in fact aided and abetted the perpetrator's commission of the crime. The instruction continued, "Someone aid[s] and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specially intends to, and does in fact aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." The jury was not instructed on felony murder (CALCRIM Nos. 540A and 540B); nor was it instructed with CALCRIM Nos. 402, 403 or any other instruction on the natural and probable consequences doctrine as it relates to aiding and abetting.

### 3. *Verdict, Sentence and Appeal*

The jury convicted Russell of first degree murder and both counts of attempted willful, deliberate and premeditated murder and found true the special allegations the offenses had been committed for the benefit of a criminal street gang. As to the murder count and one of the two attempted murder counts, the jury found true the allegations a principal had discharged a firearm causing death or great bodily injury. As to the second attempted murder count, the jury found true that a principal had discharged a firearm. The trial court sentenced Russell to an aggregate indeterminate state prison sentence of 105 years to life plus a determinate term of 20 years.

We affirmed Russell's convictions on appeal, rejecting his contentions the trial court had erred in denying his *Batson-Wheeler* motions and admitting a gang expert's opinion testimony based on hearsay and the prosecutor had engaged in misconduct during closing argument. We struck as unauthorized the 10-year gang enhancements imposed and stayed on each count pursuant to section 186.22, subdivision (b)(1)(C), and the minimum parole

5

eligibility of 15 years imposed pursuant to section 186.22, subdivision (b)(5).

4. *Russell's Section 1170.95 Petition*

On February 25, 2019 Russell, representing himself, filed a petition for resentencing under section 1170.95 and requested the court appoint counsel to represent him in the resentencing proceedings. Russell checked several boxes on the printed form petition purporting to establish his eligibility for resentencing relief, including the box stating at trial he had been convicted of murder pursuant to the felony-murder rule or the natural and probable consequences doctrine and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill 1437. He also checked additional boxes applicable only to a petitioner who had been convicted of felony murder.

The District Attorney filed two memoranda in opposition to the petition on April 10, 2019, one contending Senate Bill 1437 and section 1170.95 were unconstitutional and the second arguing Russell was ineligible for resentencing relief because his conviction was based on the theory he was a direct aider and abettor of the murder who had acted with an express intent to kill, not the felony-murder rule (noting there was no underlying serious felony enumerated in section 189, subdivision (a)), or the natural and probable consequences doctrine (explaining there was no target offense). Among other exhibits, the second memorandum attached a copy of this court's opinion affirming Russell's convictions.

The court appointed counsel to represent Russell on April 29, 2019 (the same counsel who had represented Russell at trial) and gave Russell 30 days to reply to the District Attorney's

opposition papers.  The District Attorney filed a supplemental response in opposition on November 19, 2019, which attached the jury instructions given at Russell's trial.  The prosecutor noted the jury had not been instructed on the felony-murder rule or the natural and probable consequences doctrine.

Russell, through his counsel, filed a document entitled "motion for resentencing" on December 4, 2019, which included a memorandum arguing Russell was eligible for resentencing because he had been convicted of first degree murder under the natural and probable consequences doctrine.  The memorandum emphasized the language in CALCRIM No. 520 explaining, "[a]n act causes death if the death is the direct, *natural, and probable consequence* of the act and death would not have happened without the act."

Following argument from counsel at a hearing on February 4, 2020, the court (Judge Richard S. Kemalyan) denied the motion, finding Russell had failed to make a prima facie showing he was entitled to relief.  Judge Kemalyan, after reminding counsel he had presided at the trial and was familiar with the facts, explained his ruling:  "Mr. Russell was convicted of first degree murder, not on a felony-murder theory, not on a natural and probable consequences theory.  There was no target offense.  It was a murder that was alleged.  There was no natural and probable consequences jury instruct that was given.  The instruction given in this matter, 520, was for purposes of the determination as to whether this was express or implied malice. And of course, the defendant having been convicted of first degree murder, the issue of malice becomes fairly obvious.  Even assuming that there's some merit to Mr. Russell's argument, I

7

don't think there's any question that he was a major participant in the killing and acted with reckless indifference to human life."

Russell filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowed the felony-murder exception to the malice requirement for murder. (See, e.g., *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 236, review granted Mar. 10, 2021, S266652; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1080.) It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Gentile*, at p. 859.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivision (c), prescribes a process for the court to determine whether to issue an order to show cause and hold an evidentiary hearing to consider if the murder conviction should be vacated and the petitioner resentenced on any remaining counts: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of

8

this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . .  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction and "can dismiss any petition filed by an individual who was not actually convicted of first or second degree murder." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 330 (*Verdugo*), review granted Mar. 18, 2020, S260493.)  "The record of conviction might also include other information that establishes the petitioner is ineligible for relief as a matter of law because he or she was convicted on a ground that remains valid notwithstanding Senate Bill 1437's amendments to sections 188 and 189."  (*Ibid.*)

As this portion of our decision in *Verdugo* emphasized, for relief to be denied without the court first issuing an order to show cause and conducting an evidentiary hearing, the record of conviction must establish the petitioner's ineligibility as a matter of law.  (*Verdugo*, *supra*, 44 Cal.App.5th at p. 330, review granted; see *People v. Smith* (2020) 49 Cal.App.5th 85, 92, review granted July 22, 2020, S262835 ["[i]f it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may deny the petition"]; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18,

2020, S260410 [record must show defendant is "indisputably ineligible for relief"].)

If the section 1170.95, subdivision (c), prima facie showings have been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3); *Rodriguez, supra*, 58 Cal.App.5th at p. 230, review granted; *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974; but see *People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2021, S265309.) The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens. (See *People v. Tarkington* (2020) 49 Cal.App.5th 892, 898-899, review granted Aug. 12, 2020, S263219; *People v. Drayton* (2020) 47 Cal.App.5th 965, 981; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, review granted Mar. 18, 2020, S260598.)

2. *Russell Was Not Convicted of Murder Under the Felony-murder Rule or the Natural and Probable Consequences Doctrine and Is Not Eligible for Resentencing Relief*

Noting the jury did not find he was Corbin's actual killer and focusing on the reference to the natural and probable consequences of an act in CALCRIM No. 520's definition of implied malice, Russell argues he was convicted under the now-invalid natural and probable consequences doctrine of accomplice liability for murder, not as a direct aider and abettor of Corbin's murder. Accordingly, he contends, the superior court erred in

10

ruling he had failed to establish a prima facie case of eligibility for resentencing relief. Russell's record of conviction belies that contention.

As the Supreme Court explained in *Gentile, supra,* 10 Cal.5th at pages 843 to 844, "Our law recognizes two forms of liability for aiders and abettors. [Citation.] First under direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.' [Citation.] [¶] Second, under the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directedly aided or abetted (i.e. the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted (i.e., the nontarget offense). . . . [¶] Unlike direct aiding and abetting liability, culpability under the natural and probable consequences theory does not require an accomplice to share the direct perpetrator's intent."

Russell's jury, instructed only with the elements of accomplice culpability based on direct aiding and abetting, found Russell guilty of first degree murder. That verdict necessarily meant the jury found Corbin's shooter had acted with express malice and Russell, even if he was not the shooter, shared that intent while assisting the shooter in committing the murder. As such, he was ineligible for resentencing under section 1170.95 as a matter of law. (See *Verdugo, supra,* 44 Cal.App.5th at p. 336, review granted [affirming summary denial of section 1170.95 petition; "our review of the record confirmed that Verdugo's

11

conviction for first degree murder was based on a jury finding he had aided and abetted Barraza in the commission of that offense and had acted with express malice in doing so"].)

Because the jury found Russell had acted with express malice when aiding in Corbin's murder, Russell's argument regarding the natural and probable consequences language in the implied malice instruction is immaterial to a determination of his eligibility for resentencing relief.  It is also fundamentally unsound, as the court of appeal held in *People v. Soto* (2020) 51 Cal.App.5th 1043, review granted August 17, 2020, S263939.

Directly addressing the language issue Russell raises, the *Soto* court explained:  "Although the instructions related to implied malice and the natural and probable consequences doctrine of aiding and abetting include similar language regarding a 'natural consequence,' they are distinctly different concepts.  Implied malice is a mental state for the commission of the crime of second degree murder either by the principal or as an aider and abettor (as was the case here for Soto) to murder. . . .  [¶]  The California Supreme Court has made clear that a 'direct' aider and abettor must—at a minimum—share in the mens rea of the actual perpetrator, whereas an 'indirect' aider and abettor (i.e., one whose liability is premised on the natural and probable consequences doctrine) need only intend to aid a different, less serious 'target' crime, than the consequent crime." (*People v. Soto*, *supra*, 51 Cal.App.5th at pp. 1056-1057, review granted.)  The *Soto* court continued, "For implied malice murder, [the required] intent is that the perpetrator "'knows that his conduct endangers the life of another and . . . acts with conscious disregard for life.'"  [Citation.]  The 'physical component' required for implied malice murder 'is satisfied by the performance of "an

12

act, the natural consequences of which are dangerous to life.'" [Citation.] [¶] . . . Unlike aiding and abetting implied malice murder, which requires the aider and abettor to (at least) share the mental state of the actual perpetrator of implied malice murder, "'aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense [e.g., murder] because the nontarget offense was not intended at all.'"'" (*Id.* at p. 1058.) This distinction between the mental state required for direct aiding abetting liability and culpability under the natural and probable consequences doctrine is critical, the *Soto* court concluded, because relief under section 1170.95 is available only to those convicted of murder by operation of the natural and probable consequences doctrine or the felony-murder rule. "Senate Bill No. 1437 changed the circumstances under which a person could be convicted of murder without a showing of malice, but it did not exclude from liability persons convicted of murder for acting with implied malice." (*Soto*, at p. 1057.)

*Soto*'s analysis is persuasive, and we decline Russell's invitation to disagree with it. As in *Soto*, the jury here necessarily found Russell guilty of murder based on his own actions and mental state as a direct aider and abettor of murder, not based on a theory of vicarious liability or imputed malice, the subject of Senate Bill 1437.

## DISPOSITION

The postjudgment order denying the petition for resentencing is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.